UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DONALD L. WITSCHGER

                        Plaintiff

                v.                                    Case No. 1:11-cv-814-HJW

E. I. DUPONT DE NEMOURS
AND COMPANY, et al,

                    Defendants

## ORDER

Pending are the "Motion for Summary Judgment" (doc. no. 20) by defendant E.I. DuPont De Nemours Company ("DuPont") and the "Motion for Summary Judgment" (doc. nos. 24) by defendant Troy Electric, Inc. ("Troy"). Plaintiff has filed a single combined brief in opposition. The defendants have each submitted "Proposed Findings of Fact and Conclusions of Law," which plaintiff has highlighted as true, false, or irrelevant (doc. nos. 28, 29). Having fully considered the record, including the parties' briefs, proposed findings, and applicable authority, the Court will grant both motions for the following reasons:

## I.  Background and Procedural History

The following facts are largely undisputed. Any exceptions or disputed "characterizations" will be noted and discussed herein. DuPont hired Donald Witschger ("plaintiff") on August 16, 1984 as a Limited Skilled Employee ("LSE") on a temporary basis at $6.80 per hour at its Fort Hill plant.[1] The Fort Hill plant is located in North Bend, Ohio, and is a small plant with approximately 20

---

[1] Plaintiff was born January 31, 1945 (Witschger Dep. at 160-161).

employees. **The Fort Hill plant produces sulfuric acid products and is part of DuPont's overall "DuPont Chemical Solution Enterprise ("DCSE") group. Plaintiff was laid-off for a short period of time, but rehired in 1985. He was hired back as a "contract employee" and received his paychecks through a payroll service ("Franklin") (Ellis Dep. at 13). For the next twenty years, he worked as an unskilled general laborer performing a wide variety of tasks, such as janitorial work (sweeping, clean-up, taking out trash), painting, moving equipment, receiving packages, oil changes on vehicles, cutting grass, and shoveling snow. By all accounts, plaintiff performed his duties well and had no disciplinary issues.**

**Troy Electric, Inc. is a Cincinnati-area electrical contractor owned and operated by Tim Sneed. Beginning in the mid-1990s, DuPont contracted with Troy to perform electrical work at the Fort Hill plant. In 2007, DuPont was having "issues with people getting paid" by Franklin, and thus, DuPont area manager Robert Ellis approached Sneed and asked Sneed to put plaintiff on Troy's payroll (Brown Dep. at 16; Ellis Dep. at 12-14). Sneed agreed. Thereafter, plaintiff completed weekly time sheets for Troy and received his paycheck from Troy. As of 2010, plaintiff's rate of pay was $26.02 per hour (doc. no. 20-3 at 16). Troy billed DuPont for the work done by Troy's employees at the plant (doc. no. 22-2 at 101).**

**By October 2008, the United States was experiencing a serious recession. As a result of the downturn in the economy, demand for DuPont products was very low. DuPont indicates that its customers delayed or cancelled $100 million in orders in the fourth quarter of 2008 alone (doc. no. 20-5 at 42). By February 2009, the plant was operating only at about 60-65% productivity (Id. at 89). In order for**

the DCSE division (including the Fort Hill plant) to survive, DuPont announced plans to substantially reduce costs and contractor headcount. In 2009, directives from DuPont's corporate headquarters repeatedly emphasized the need to further reduce costs. Plaintiff does not dispute this (doc. no. 29 at 3, ¶¶ 10-12).

As instructed, Eric Brown, Fort Hill's plant manager, made necessary reductions. By November 2008, he reduced the plant's ten contractors down to seven (doc. no. 29 at 3, ¶ 11a). When DuPont informed plant managers that more needed to be done "to absorb job duties with current employees and further reduce contractor numbers" (¶ 11c), Mr. Brown advised personnel that he had been asked to "take a hard look at what we're doing and scale back wherever possible" (¶ 11d). On December 4, 2008, DuPont instructed plant managers to "[i]mmediately and drastically reduce spending . . . redeploy DuPont employees to replace contractors" (¶ 11e). Mr. Brown then reduced the Fort Hill plant down to six contractors (¶ 11f).

These directives to reduce expenses continued in 2009. A January 2009 directive instructed plant managers to only bring back persons "with critical skills you need to safely operate" (¶ 12; doc. no. 20-5 at 86 "we have reduced 750 contractors from a starting point of over 1400"). A February 2009 directive indicated "business has not improved . . . we have a new target – by the end of March – to get under 500 contractors" (Id. at 90). A June 2009 directive indicated "there is still a tremendous push on contractors. . . we have a goal to be at 442 contractors . . . we are at 497 . . . I am asking each of you to look again . . . It is critical – not just for the 2nd quarter, but also for 3Q and 4Q also" (Id. at 111). A

July 2009 email with multiple directives indicated that "due to a very weak global economy, we saw significantly reduced demand" (Id. at 131). It further indicated that "looking to the second half of 2009, we will stay the course on the Four Directives" which included targeted cost reductions (Id. at 132). Due to the recession, the Fort Hill plant's use of Troy Electric was "reduced down from two or three electricians down to one at times" (Brown Dep. at 47). In early 2010, DuPont advised plant managers that "contractors will continue to receive significant attention in 2010" (doc. no. 20-6 at 10) and repeatedly reminded them to update "contractor count" spreadsheets (Id. at 10-20).

In response to these repeated corporate directives, Mr. Brown indicates he made reductions, but did not initially select plaintiff (Brown Dep. at 29). He explains that plaintiff had told him in 2009 that he intended to retire in early 2010 when he reached age 65 (Id. at 27, 31-32). Plaintiff acknowledges that "I was thinking of retiring, checking it. I had to check in and see how much money I was going to get" and that in 2009 "he had talked to several people [at DuPont] about it" (Witschger Dep. at 131-132). Mr. Brown indicates he sought to retain plaintiff until his planned retirement date of January 31, 2010 (Brown Dep. at 52).

In September of 2009, Mr. Brown learned that new federal regulations -- the Chemical Facility Anti-Terrorism Standards ("CFATS") -- required the plant to hire four to five security personnel for 24/7 security (doc. no. 20-5 at 133; 20-6 at 5). The Fort Hill plant was affected by these regulations because it produces chemicals that the Department of Homeland Security ("DHS") deems a potential

security risk.[2] Plaintiff lacked the skills to be hired for such positions. Mr. Brown had to seek approval for this necessary exception to the directives for cost reductions (doc. no. 20-6 at 8-9). This extra expense put even more financial pressure on the plant.[3] In his planning for Fort Hill's 2010 budget, and given previous discussions with plaintiff about his intention to retire, Mr. Brown did not include money for plaintiff's position in the 2010 budget (Brown Aff. ¶ 10).

Just before turning 65 on January 31, 2010, plaintiff received his Social Security card and estimate of benefits (Witschger Dep. at 133-134, indicating he went to the Social Security office in January 2010 and "asked them about how much money was I going to get. That's when I found out I ain't going to have the money"). He acknowledges that he realized he "wouldn't be able to afford to retire on it." (Id. at 161). When Mr. Brown asked plaintiff in January 2010 about retirement (Brown Dep. at 32), plaintiff indicated he could not "afford" to retire (Witschger Dep. at 137 "I says, I ain't going to receive enough money, you know, to be able to afford to retire."). Mr. Brown advised plaintiff that his position was not in the budget for 2010 (Brown Dep. at 32-33; Witschger Dep. at 137). When plaintiff indicated he would not get his first Social Security check until the end of February, Mr. Brown agreed to keep plaintiff for one more month until his Social

---

[2] The Department of Homeland Security Appropriations Act ("Act") required DHS to issue "regulations establishing risk-based performance standards for security of chemical facilities and requiring vulnerability assessments and the development and implementation of site security plans for chemical facilities." Pub.L. No. 109–295, § 550(a). See 6 C.F.R. § 27.100 et seq. ("The purpose of this Part [the CFATS] is to enhance the security of our Nation by furthering the mission of the Department as provided in 6 U.S.C. § 111(b)(1) and by lowering the risk posed by certain chemical facilities.").

[3] Plaintiff "disputes" this, but offers no explanation as to why additional expenses would not put more financial pressure on the plant (doc. no. 29 at 6, ¶ 21).

Security checks started arriving (Brown Dep. at 32-33). Mr. Brown advised Troy that DuPont would no longer be needing plaintiff's services, and in turn, on February 26, 2010, Mr. Sneed informed plaintiff that his employment was terminated due to "reduction in force" for lack of work (doc. no. 20-3 at 21).[4] Meanwhile, the plant held a retirement party for plaintiff, and he received gifts (a card and money) at the dinner (Witschger Dep. at 148-149, 179 "it was big dinner, I mean, a steak dinner").

In April of 2010, plaintiff filed an EEOC complaint against DuPont, alleging that he was terminated because of his "age" (doc. no. 20-3 at 19). A notice of suit rights was mailed to plaintiff on July 15, 2011 (doc. no. 22-3 at 78). On October 12, 2011, plaintiff filed a complaint in the Court of Common Pleas for Hamilton County, Ohio. He asserted 1) a federal claim under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., against DuPont; 2) a state claim of age discrimination pursuant to Ohio R.C. § 4112.14(B) against both defendants; 3) a state claim of age discrimination pursuant to Ohio R.C. §§ 4112.02 and 4112.99 against both defendants; and 4) a state claim of intentional infliction of emotional distress against both defendants.

DuPont removed this case to federal court on November 17, 2011, on the basis of federal question jurisdiction, 28 U.S.C. § 1331, for plaintiff's ADEA claim against DuPont, and supplemental jurisdiction, 28 U.S.C. § 1367, for plaintiff's state law claims against both defendants. After completion of discovery in

---

[4] Plaintiff acknowledges that Sneed informed him he was terminated for "lack of work," but nonetheless "disputes" that he was terminated because Troy had "no work" for him (doc. no. 28, ¶¶ 11-12). It is uncontroverted that DuPont informed Troy it no longer needed plaintiff's services.

November 2012, the defendants each filed a motion for summary judgment on all claims (doc. nos. 20, 24). DuPont filed transcripts of the depositions of plaintiff and three DuPont employees: Eric Brown (Fort Hill plant manager 2008-2010), Frank Hardin (Fort Hill operations supervisor 2008-2011), and Robert Ellis (DuPont area manager) (doc. no. 22). Troy filed the transcript of Tim Sneed's deposition (doc. no 23). Plaintiff filed a single brief in opposition (doc. no. 26). In support, he relies on the affidavit of Everett Brown, a welder who formerly worked for Troy at the Fort Hill plant (doc. no. 27). Defendants have both replied (doc. nos. 31, 32). The motions are fully briefed and ripe for consideration.

## II. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure, as amended on December 1, 2010, provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense or the part of each claim or defense on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Rule 56(c)(1) further provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Under Rule 56, the moving party bears the burden of proving that no genuine issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586 (l986). The court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. Id. at 587. In doing so, courts must distinguish between evidence of disputed material facts and mere "disputed matters of professional judgment," i.e. disagreement as to legal implications of those facts. Beard v. Banks, 548 U.S. 521, 529 30 (2006).

On summary judgment review, the court must determine whether the evidence presents a sufficient dispute of material fact to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Id. at 248.  A mere scintilla of evidence in support of a party's claim is insufficient to survive summary judgment, as there must be enough evidence that a jury could reasonably find for the party.  Id. at 251.

## III.  Relevant Statutes

The ADEA bars an employer from discharging an employee "because of such individual's age." 29 U.S.C. § 623(a)(1). Similarly, Ohio R.C. § 4112.02 provides in relevant part that "[i]t shall be an unlawful discriminatory practice: (A) For any employer, because of the . . . age . . . of any person, to discharge without just cause." Another Ohio statute, Ohio R.C. § 4112.14(A), provides in relevant part that: "[n]o employer shall . . .  discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise

meets the established requirements of the job and laws pertaining to the relationship between employer and employee."[5]

## IV. Discussion

### A. The State and Federal Age Discrimination Claims

Given the similarity of the statutes, courts may generally apply federal precedent to age discrimination claims under Ohio law. Minadeo v. ICI Paints, 398 F.3d 751, 763 (6th Cir. 2005) (the ADEA "is applicable to state law claims brought pursuant to Ohio age discrimination law"); Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 357 (6th Cir. 1998) ("[u]nder Ohio law, the elements and burden of proof in a state age-discrimination claim parallel the ADEA analysis"); Sarvak v. Urban Retail Properties, LLC, 2013 WL 1798984, *3 (6th Cir. (Ohio)) (federal and state claims of discrimination may be considered together). Plaintiff's federal and state age discrimination claims will therefore be analyzed together.

Claims of employment discrimination may be supported with direct or indirect evidence. Yeschick v. Mineta, 675 F.3d 622, 632 (6th Cir. 2012); Kohmescher v. Kroger Co., 61 Ohio St.3d 501, 505 (1991). Under either type of evidence, the ultimate burden of persuasion remains on the plaintiff to show "that age was the 'but-for' cause of the adverse employment action. Geiger v. Tower

---

[5] The state causes of action for age discrimination are mutually exclusive. See Ohio R.C. § 4112.02(N) ("A person who files a civil action under this division is barred . . . from instituting a civil action under section 4112.14"); and see, Ohio R.C. § 4112.14(B) ("any person instituting a civil action under this section is . . . barred from instituting a civil action under division (N) of section 4112.02"). Regardless, as the record plainly establishes that the defendants are entitled to summary judgment on all claims of age discrimination raised by plaintiff, the Court need not address this "alternative" pleading.

**Auto.**, 579 F.3d 614, 620 (6th Cir. 2009) (citing **Gross v. FBL Financial Services, Inc.**, 557 U.S. 167, 180 (2009)).

### 1. Direct Evidence

Direct evidence is "evidence that proves the existence of a fact without requiring any inferences." **Grizzell v. City of Columbus Div. of Police**, 461 F.3d 711, 719 (6th Cir. 2006); **Rowan v. Lockheed Martin Energy Sys., Inc.**, 360 F.3d 544, 548 (6th Cir. 2004). "Direct evidence is composed of only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor." **Umani v. Michigan Dep't of Corr.**, 432 Fed.Appx. 453, 458 (6th Cir. 2011).

Plaintiff has not shown "direct evidence" of age discrimination by either DuPont or Troy.[6] The record reflects that during the summer of 2009, Mr. Brown learned from plaintiff that he intended to retire at age 65 (Brown Dep. at 31-32). Plaintiff acknowledges that he talked about his pending retirement with several people at DuPont (Witschger Dep. at 132 "I know that I talked to several people about it."). Other employees recalled this (Hardin Dep. at 14 "Don had made the

---

[6]Plaintiff alleges, and DuPont does not dispute, that DuPont controlled the "manner and means" of the unskilled work he performed at the Fort Hill plant. See **Sutherland v. Mich. Dept. of Treasury**, 344 F.3d 603, 612 (6th Cir. 2003) (citing **Nationwide Mut. Ins. Co. v. Darden**, 503 U.S. 318, 323 (1992)); **Swallows v. Barnes & Noble Book Stores, Inc.**, 128 F.3d 990, 993 (6th Cir. 1997). DuPont emphasizes that even if plaintiff is deemed its employee, plaintiff's position was eliminated solely for financial reasons in the severe recession and had nothing to do with plaintiff's age. In fact, the evidence suggests that plaintiff could have been let go earlier, but that the plant manager allowed plaintiff to continue until his planned retirement date (Hardin at 19 "I understood they were doing Don a favor letting him stay longer and keeping him there instead of some of the other contractors").

statement about he would be retiring in February when he turned 65"; Ellis Dep. at 20 indicating the subject came up in general conversation). Although plaintiff acknowledges that he had spoken about retiring, he now complains that the plant manager asked him about it and allegedly "told" him to fill out pension forms.[7]

Mr. Brown could legitimately inquire about plaintiff's plans to retire. See Rowan, 360 F.3d at 549 (finding that this reflected a legitimate concern about approaching retirement and did not constitute direct evidence of age discrimination); Lefevers v. GAF Fiberglass Corp., 667 F.3d 721, 724 (6th Cir. 2012) (same). In order to properly plan for budget and staffing concerns, he could inquire about potential retirements. It is well-settled that such inquiries do not constitute direct evidence of age discrimination. Woythal v. Tex-Tenn Corp., 112 F.3d 243, 244 (6th Cir. 1997) (affirming summary judgment because employer had "a legitimate concern in making sure that [its business] had continuing engineering support" and "was entitled to inquire of [plaintiff] whether the rumors [about his retirement] were true."). Typically, evidence "is not considered direct evidence unless a[n improper] motivation is explicitly expressed." Grubb v. YSK Corp., 401 Fed.Appx. 104, 109 (6th Cir. 2010). No such improper motivation was explicitly expressed when Mr. Brown responded to plaintiff's request for pension forms or inquired about plaintiff's retirement plans.

---

[7] Although plaintiff claims that Mr. Brown "told" him in November 2009 to fill out pension paperwork (Witschger Dep. at 158-159, 173), Mr. Brown explains that *plaintiff* and Everett Brown had asked *him* about a DuPont pension (Brown Dep. at 33 indicating they had asked "what they had to do to apply for DuPont pension."). Pursuant to DuPont policy, he provided them with the forms.

Although plaintiff vaguely complains that he (or his friend Everett Brown) heard or "overheard" other comments (i.e. that plaintiff had been there "so damn long" and "that guy's out of here") at some unspecified time, "comments that are vague, ambiguous or isolated do not support a finding of discrimination and cannot be used as direct evidence to establish that an adverse action was motivated by discriminatory intent." Refaei v. Ohio State Univ. Hosp., 2011 WL 6916460, *8, ¶ 36 (Ohio App. 10 Dist.); Byrnes v. LCI Comm. Holdings Co, 77 Ohio St.3d 125, 130 (1996); White v. Columbus Metro. Hous. Auth., 429 F.3d 232, 239 (6th Cir. 2005). "Isolated and ambiguous statements . . . are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination." Langlois v. W.P. Hickman Sys., Inc., 2006 WL 2036553 (Ohio App. 8 Dist.) (quoting Stair v. Phoenix Presentations, Inc, 116 Ohio App.3d 500, 506 (1996)). Even assuming such comments were made, they would require an inference in order to be given the meaning urged by plaintiff, and thus, are not direct evidence.

Although plaintiff complains that Frank Hardin sarcastically offered to take him to work as a Wal-Mart greeter, plaintiff acknowledges that this comment occurred *after* Mr. Brown had already eliminated plaintiff's position from the plant's 2010 budget (Witschger Dep. at 137-138; Brown Dep. at 32-33). Hardin also testified he was not involved in the decision "to let Don go" (Hardin Dep. at 20 "No, not at all."). "Comments made by individuals who are not involved in the decision-making process regarding the plaintiff's employment do not constitute direct evidence of discrimination." Carter v. Univ. of Toledo, 349 F.3d 269, 273 (6th

Cir. 2003); <u>Blizzard v. Marion Tech. College</u>, 698 F.3d 275, 87 (6th Cir. 2012); <u>Geiger</u>, 579 F.3d at 621; <u>Thompson v. City of Lansing</u>, 410 Fed.Appx. 922, 929 (6th Cir. 2011).

As for Troy, plaintiff has not pointed to any evidence indicating that *anyone* at Troy made *any* age-related discriminatory comments to him. He has not pointed to any evidence that Troy knew or should have known of any allegedly discriminatory comments by DuPont employees and failed to take any corrective measures within its control. In fact, as Troy aptly points out, "all of the evidence reveals the contrary" (doc. no. 31 at 3). Plaintiff acknowledged at deposition that he never complained to anyone at Troy about any conduct or comments of DuPont employees and that Troy had no reason to know of any improper comments by DuPont employees (Witschger Dep. at 226-227 "Q: Is there any reason that Tim Sneed or Troy Electric should know anything about any age-related comments made to you? A: No."). In fact, Tim Sneed testified that he had no knowledge of plaintiff's allegations until he was served with the complaint in this action (Sneed Dep. at 67-68).

Plaintiff has shown no nexus between any allegedly age-related comments and his termination from Troy for "lack of work." Plaintiff has also shown no nexus between any such comments and the decision to eliminate his "non-critical" position as an unskilled general laborer from the plant's 2010 budget. See <u>Smith v. E.G. Baldwin & Assoc., Inc</u>., 119 Ohio App.3d 410, 416 (Ohio Ct.App. 10th Dist. 1997) (under Ohio R.C. §§ 4112.02 or 4112.14, when relying on direct evidence, an employee must show "a causal link or nexus" between the

discriminatory comments and the adverse action); Peters v. Rock-Tenn Co., 2011 WL 3503246, *5, ¶ 54 (Ohio App. 5 Dist.) (citing Byrnes v. LCI Comm. Holdings Co, 77 Ohio St.3d 125, 130 (1996), cert. denied, 521 U.S. 1104 (1997)).

### 2. Indirect Evidence

A plaintiff may establish a claim of employment discrimination through indirect (circumstantial) evidence. Indirect evidence does not on its face establish discriminatory animus, but allows the factfinder to draw the reasonable inference that discrimination occurred. Kline v. Tenn. Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997). If a plaintiff relies on indirect evidence, the burden-shifting evidentiary framework of *McDonnell Douglas* applies. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973); Ercegovitch v. Goodyear Tire & Rubber Co., 154 F.3d 344 (6th Cir. 1998) (applying burden-shifting analysis to age discrimination claim based on indirect evidence). Courts apply the same framework to discrimination claims brought under Ohio law. Coryell v. Bank One Trust Co. N.A., 101 Ohio St.3d 175, 179 (2004) (applying burden-shifting analysis to Ohio R.C. § 4112 claims based on indirect evidence); Smith,, 119 Ohio App.3d at 414 ("the methods for establishing a prima facie case of age discrimination are the same regardless of whether a claim is brought under R.C. 4112.02 or 4112.14").

When an employee is discharged as part of a workforce reduction ("RIF"), the employee establishes a prima facie case of age discrimination when he shows that (1) he was forty-years old or older at the time of his dismissal; (2) he was qualified for the position; (3) he was discharged; and (4) "additional direct,

circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." <u>Ercegovitch</u>, 154 F.3d at 350 (quoting <u>Barnes v. GenCorp Inc.</u>, 896 F.2d 1457, 1465 (6th Cir.1990), cert. denied, 498 U.S. 878 (1990)); <u>Geiger</u>, 579 F.3d at 623; <u>Mittler v. OhioHealth Corp.</u>, 2013 WL 1749697, *7 (Ohio App. 10 Dist.).

If plaintiff establishes a prima facie case, the burden of production shifts to defendant to articulate a legitimate, nondiscriminatory reason for its action. <u>McDonnell Douglas</u>, 411 U.S. at 802. The burden then shifts back to plaintiff to produce sufficient evidence from which the jury may reasonably reject the employer's explanation as pretextual. Plaintiff must point to evidence showing that the stated reason was "false, and that discrimination was the real reason." <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515 (1993); <u>Tuttle v. Metro. Gov't of Nashville</u>, 474 F.3d 307, 320 (6th Cir. 2007) (plaintiff must point to evidence that the "proffered reason was not the true reason for the employment decision").

The parties do not dispute the first three steps. Plaintiff was 65 years old at the time of his discharge and was in the "protected class" of employees over the age of 40. 29 U.S.C. § 631(a). He was qualified for the position (i.e. he possessed the basic skills necessary to perform his job). See <u>Wexler v. White's Fine Furniture, Inc.</u>, 317 F.3d 564, 575 (6th Cir. 2003). He was discharged on February 26, 2010, and defendants do not dispute that this was an adverse action.

At the fourth step, plaintiff has not pointed to "direct, circumstantial, or statistical evidence" suggesting that he was "singled out" for discharge by either

Troy or DuPont for discriminatory reasons. Plaintiff was the only unskilled laborer on Troy's payroll, and was the only "unskilled" worker that DuPont was still utilizing at the Fort Hill plant. DuPont corporate directives instructed that only persons with "critical skills" should be retained. None of the directives mention anything to do with age. "The ADEA "does not require an employer to accord special treatment to employees over forty years of age, [but to treat] an employee's age . . . in a neutral fashion." <u>Slenzka v. Landstar Ranger, Inc.</u>, 122 Fed.Appx. 809, 813 (6th Cir. 2004). The plant manager eliminated plaintiff's position from Fort Hill's 2010 budget. Troy had already experienced a decrease in work from DuPont (Brown Dep. at 47, indicating Fort Hill's use of Troy Electric was "reduced down from two or three electricians down to one at times"). Troy indicates it has not hired another general laborer, regardless of age. Plaintiff has not pointed to any evidence suggesting otherwise.

DuPont asserts that plaintiff was not replaced and his miscellaneous duties were spread among existing employees or outsourced (Brown Dep. at 48-49, indicating that no general laborer was hired to do the work that plaintiff did and describing how plaintiff's former duties were spread among others; Hardin Dep. at 22-24 "It's kind of been spread out amongst different people" and giving specific examples). A person is "replaced" when an employee is hired to takeover that person's duties. <u>Godfredson v. Hess & Clark, Inc.</u>, 173 F.3d at 372. An employee is not "replaced" when the work is merely spread among existing employees. <u>Barnes v. GenCorp. Inc.</u>, 896 F.2d 1457, 1465 (6th Cir. 1990); <u>Atkinson v. Internatl. Technegroup, Inc.</u>, 106 Ohio App.3d 349, 359 (1995) ("a person is not

replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work"); <u>Smith</u>, 119 Ohio App.3d at 415.

Plaintiff had performed a wide variety of miscellaneous duties that were reassigned to others or outsourced. For example, plaintiff had changed the oil in vehicles from time to time. After his departure, plant vehicles were simply taken to a garage for oil changes. As for taking out the trash and other such duties, the plant's operations manager explained, "everyone has picked up different things" (Hardin Dep. at 24; see also, Brown at 44-48, 49; Ellis Dep. at 26-27). Although plaintiff speculates that a "younger" person named Patrick may have taken over some of his duties, he acknowledges that he does not actually know who was doing his former duties (Witschger Dep. at 145-146, 153-157; see also, Ellis Dep. at 26-27 indicating that Patrick was employed by contractor D & B Construction, was doing a special project as a "fumes scrubber," and was not doing plaintiff's duties). Even if this company took over some of plaintiff's duties, as former Troy co-worker Everett Brown contends (doc. no. 27, ¶ 8), DuPont could reorganize and outsource work as a cost-saving measure. <u>Madry v. Gibraltar Nat. Corp</u>., 2013 WL 2097357, *4 (6th Cir. (Mich.)) ("reducing labor costs and improving efficiency are valid business reasons for conducting layoffs"); <u>Shah v. NXP Semicond. USA, Inc</u>., 2012 WL 6013771, *11 (6th Cir. (Mich.)) (employee was not "replaced" after RIF when his accounts were redistributed). Neither DuPont nor Troy hired an employee to replace plaintiff. Even viewing the evidence most favorably to

plaintiff, he has not established a prima facie case of age discrimination against either defendant.

Moreover, the defendants have articulated legitimate nondiscriminatory reasons for plaintiff's discharge. DuPont's need to cut expenses due to the severe recession is well-documented (see e.g., Hardin Dep. at 15 "production was real low and were asked to take off two weeks without pay). In the ongoing effort to reduce costs, DuPont informed Troy it would not be using plaintiff's unskilled services any more, and Troy then discharged plaintiff (the only unskilled laborer on its payroll) for "lack of work." See, e.g., Bell v. Prefix, Inc., 321 Fed. Appx. 423, 428 n. 1 (6th Cir. 2009) (explaining that "RIFs are legitimate, nondiscriminatory reasons for adverse employment decisions"); Gambill v. Duke Energy Corp., 456 Fed. Appx. 578, 588 (6th Cir. 2012) (same). The "ADEA was not intended to protect older workers from the often harsh economic realities of common business decisions and the hardships associated with corporate reorganizations." Allen v. Diebold, Inc., 33 F.3d 674, 677 (6th Cir. 1994); Langlois v. W.P. Hickman Sys., Inc., 2006 WL 2036553 (Ohio App. 8 Dist.) (holding that company made the legitimate choice to reduce its employees in order to survive difficult economic period); Mittler, 2013 WL 1749697 at 11, ¶ 53 (same).[8]

The burden of production then shifts to plaintiff to show that the stated reasons for his discharge were pretextual. A plaintiff may establish pretext by

_____

[8] Plaintiff's suggestion that the reductions were "not a RIF" because they concerned contractors undermines his own basis for asserting an ADEA claim against DuPont. See Weary v. Cochran, 377 F.3d 522, 524–25 (6th Cir. 2004) (the ADEA protects employees, not contractors).

showing that the employer's stated reason for the adverse action (1) had no basis in fact, (2) did not actually motivate the action; or (3) was insufficient to warrant the action. <u>Seeger v. Cincinnati Bell Tel. Co., LLC</u>, 681 F.3d 274, 285 (6th Cir. 2012); <u>Mittler</u>, 2013 WL 1749697 at *9, ¶ 44. Plaintiff has not established pretext in any of these ways.

It is undisputed that Troy let plaintiff go after learning that DuPont would not be using his services any more. Troy's stated reason ("lack of work") therefore had a basis in fact and was sufficient to warrant his discharge. Plaintiff presents no evidence contradicting the existence of ongoing cost reductions at DuPont due to the recession, and corresponding "lack of work" at Troy. Although he speculates that he was let go because of his age, "mere personal belief, conjecture and speculation are insufficient to support an inference of . . . discrimination." <u>Grizzell v. City of Columbus</u>, 461 F.3d 711, 724 (6th Cir. 2006) (quoting <u>Woythal</u>, 112 F.3d at 247); <u>Lascu v. Apex Paper Box Co.</u>, 2011 WL 3860508, *5 (Ohio App. 8 Dist.) (employee's unsupported assertions were insufficient to demonstrate that employer's legitimate, non-discriminatory reason for RIF that resulted in employee's termination was pretext for discrimination). The record is devoid of any evidence that the defendants' decision to reduce expenses and eliminate plaintiff's position was merely pretextual.

Given the well-documented economic downturn, DuPont chose to eliminate plaintiff's unskilled services from the plant's 2010 budget as a cost-saving measure. In turn, Troy discharged plaintiff for "lack of work" because it had no work for him to perform. This was a reasonable exercise of business judgment by

both defendants. See <u>Bender v. Hecht's Dept. Stores</u>, 455 F.3d 612, 627 (6th Cir. 2006) (observing that a federal court is not a "super personnel department, overseeing and second guessing employers' business decisions"); <u>Wexler</u>, 317 F.3d at 576 ("the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation"). Plaintiff has not pointed to any evidence suggesting that "lack of work" did not actually motivate his discharge from Troy. Plaintiff has not pointed to any evidence of pretext.

## C. The Claim of "Intentional Infliction of Emotional Distress"

Lastly, plaintiff brings a claim of intentional infliction of emotional distress under Ohio law. To prevail, he must prove that the defendants: (1) intentionally engaged in (2) outrageous conduct "so extreme in degree, as to go beyond all possible bounds of decency" and that (3) the conduct proximately caused (4) serious emotional distress that no reasonable person could be expected to endure. <u>Bays v. Canty</u>, 330 Fed.Appx. 594, 2009 WL 2424583 (6th Cir. (Ohio)) (citing <u>Yeager v. Local Union 20</u>, 6 Ohio St.3d 369, 374–75 (1983), abrogated on other grounds by <u>Welling v. Weinfeld</u>, 113 Ohio St.3d 464 (2007)).

Plaintiff complains that unknown persons at DuPont played several pranks on him in 2009 and 2010, such as putting underwear in his hardhat, putting some "pipe dope" in the lock of his tool box, and so on. Such conduct does not rise to the "extreme and outrageous" level necessary to state an actionable claim under Ohio law. <u>Hanly v. Riverside Methodist Hosp.</u>, 78 Ohio App.3d 73, 82 (1991) (the alleged conduct must be "extreme and outrageous"); <u>Miller v. Currie</u>, 50 F.3d 373,

377-78 (6th Cir. 1995). "Liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." <u>Yeager</u>, 6 Ohio St.3d at 375; <u>Mann v. Cinc. Enquirer</u>, 2010 WL 3328631, *5 (Ohio App. 1st Dist.) (affirming dismissal because alleged conduct did not rise to the "extreme and outrageous" level); <u>Spence v. Donahoe</u>, 2013 WL 628524, *12 (6th Cir. (Ohio)).

The decision to terminate an employee is not sufficient to sustain a claim of intentional infliction of emotional distress. <u>Blackshear v. Interstate Brands Corp.</u>, 495 Fed.Appx. 613, 2012 WL 3553499, *6 (6th Cir. (Ohio)); <u>Foster v. McDevitt</u>, 31 Ohio App.3d 237, 239 (Ohio Ct.App.1986) (an employer is entitled to act upon its legal rights, including its right to terminate an employee, regardless of whether it knew that employee might suffer emotional distress); <u>Godfredson v. Hess & Clark, Inc.</u>, 173 F.3d 365, 376 (6th Cir. 1999) (employment termination does not amount to "extreme and outrageous conduct."). No reasonable juror could find that DuPont or Troy's conduct constituted the "extreme and outrageous" conduct necessary to support such a claim. In fact, when plaintiff was asked "Is there anything that Tim Sneed or Troy Electric has done to intentionally harm you or intentionally cause harm to you?" plaintiff answered "No" (Witschger Dep. at 230). Plaintiff appropriately concedes that the evidence of record does not support" this claim (doc. no. 26 at 15).

## V. Conclusion

Plaintiff has not shown that age was a "but for" reason for his termination. He concedes that he lacks supporting evidence for his emotional distress claim. Both defendants are entitled to summary judgment on all claims against them.

## VI. Oral Argument Not Warranted

Local Rule 7.1(b)(2) provides that courts have discretion whether to grant requests for oral argument. The parties have fully briefed the relevant issues. The Court finds that oral argument is not necessary. Yamaha Corp. of Am. v. Stonecipher's Baldwin Pianos & Organs, 975 F.2d 300, 301-02 (6th Cir. 1992); Schentur v. United States, 4 F.3d 994, 1993 WL 330640 at *15 (6th Cir. (Ohio)) (observing that district courts may dispense with oral argument on motions for any number of sound judicial reasons).

Accordingly, both "Motions for Summary Judgment" (doc. nos. 20, 24) are GRANTED. This case is DISMISSED with prejudice and TERMINATED on the docket of this Court.

IT IS SO ORDERED.

s/Herman J. Weber

Herman J. Weber, Senior Judge

United States District Court